IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


JOSEPH C.,[1]

                Plaintiff,                      Case No. 6:18-cv-01818-YY

      v.

                                          OPINION AND ORDER

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.


YOU, Magistrate Judge:

      Plaintiff Joseph C. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying his applications for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, and

Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.

This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C.

§§ 405(g) and 1383(g)(3).  For the reasons set forth below, the Commissioner's decision is

REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the initial of his surname and does the same for other individuals whose identification could affect plaintiff's privacy.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on November 24, 2014, alleging a disability onset date of May 3, 2013. Tr. 13, 155-56. His date last insured was December 31, 2015. *Id.* The Commissioner denied plaintiff's applications for benefits initially and on reconsideration. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 3, 2017. Tr. 36-75. After receiving testimony from plaintiff and a vocational expert, ALJ Steven De Monbreum issued a decision on November 28, 2017, finding plaintiff not disabled within the meaning of the Act. Tr. 12-24. The Appeals Council denied plaintiff's request for review on August 9, 2018, making the ALJ's decision the final decision of the Commissioner, subject to review by this court. Tr. 1-3; 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date, December 31, 2015. Tr. 16. At step two, the ALJ determined plaintiff suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"); a depressive disorder, not otherwise specified ("NOS"); a personality disorder with narcissistic and antisocial traits; and an alcohol disorder in self-reported full remission. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform a full range of work at all exertional levels, but with the following non-exertional limitations: he could understand, remember, and carry out only short, simple, routine job instructions and unskilled work with a General Educational Development ("GED") Reasoning Level of 2 or less as defined in the Dictionary of Occupational Titles ("DOT"); he should not interact with the public; he should have only minimal superficial interaction with coworkers and supervisors; he required a static work environment with few changes in work routines and settings; and he should avoid exposure to loud noises, as such may trigger PTSD symptoms. Tr. 18-19.

At step four, the ALJ found plaintiff was unable to perform his past relevant work. Tr. 22.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy, including "janitor," "routing clerk," and "router." Tr. 22-23. Thus, the ALJ concluded plaintiff was not disabled at any time from the alleged onset date through November 28, 2017, the date of the ALJ's decision. *Id.*

## DISCUSSION

Plaintiff contends the ALJ erroneously rejected: (1) his subjective symptom testimony, (2) medical opinion evidence from his treating physicians, and (3) lay witness testimony provided by "non-acceptable" medical professionals who provided further treatment.

## I. Subjective Symptom Testimony

### A. Hearing Testimony

Plaintiff's August 3, 2017 hearing began with a substantial colloquy regarding plaintiff's PTSD impairment. The ALJ explained that construction occurring in the building was likely to cause loud noises that could exacerbate plaintiff's PTSD symptoms, and that he would stop the hearing if such were to occur. Tr. 36-37.

Once plaintiff was sworn in, he explained that he had lived in a tent for the past seven years, aside from a stint in Arkansas in 2013 to care for his father who had suffered a stroke. Tr. 43-44. He indicated that he had not sought work since that time. Plaintiff described that he did not like "being around people," as they frustrated and angered him, which was part of his decision to live in a tent, somewhat isolated from society. Tr. 45. Plaintiff testified that he possessed a bus pass and a food assistance card. Tr. 46. Plaintiff added that he did not like to

use the bus because of other riders, and noted that he stayed away from people to stay out of trouble, citing a prior conviction for felony assault.  Tr. 47.  Plaintiff indicated that he could use his food card to shop at grocery stores, but tended to do so at odd hours to avoid interactions.  Tr. 48.

The ALJ noted that some of plaintiff's prescribed medications were known to have adverse side-effects with alcohol use, which was prevalent in plaintiff's history.  Tr. 48-49.  Plaintiff indicated that he no longer abused alcohol as he had in the past, and explained that his medication, presumably for mental health symptoms, was not effective.  *Id.*  Plaintiff also described taking prescription medication for pain symptoms in his spine, feet, knees, wrists, and hands.  *Id.*  He told the ALJ that doctors had confirmed four herniated discs and that he saw a chiropractor for pain.  Tr. 51-52.  Plaintiff explained that his mental and physical symptoms had worsened since 2013.  Tr. 52.  Plaintiff recounted a number of head injuries, for which he was receiving neuropsychological feedback treatment, which the ALJ incorrectly insisted was biofeedback treatment.  Tr. 54-58.  The ALJ suggested plaintiff seek a neuropsychological evaluation to supplement the record.  Tr. 55-58.  The ALJ noted that brain trauma could cause later-in-life onset of aggressive behavior and personality changes, but noted a dearth of objective findings to diagnose brain trauma.  Tr. 55-57.  Plaintiff testified that he frequently has homicidal thoughts, and that he has trouble concentrating, and apparently has visual hallucinations unrelated to his vision.  Tr. 58-59.

Regarding activities of daily living ("ADLs"), plaintiff described staying away from other people by retreating to a bike path and watching the ducks.  Tr. 60.  He indicated he never went to the library and no longer had any hobbies.  *Id.*  Plaintiff had not seen his son since 2011.  Tr. 60-61.  Plaintiff testified that he showers at a local service station, and that he procured the

Donald Trump t-shirt he was wearing by virtue of helping someone, not attending a rally.  Tr. 61-62.

**B.      Relevant Law**

A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminated the reference to "credibility," clarified that "subjective symptom evaluation is not an examination of an individual's character," and required the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. Because plaintiff filed his applications for disability prior to the enactment of SSR 16-3p, it is not applicable to this case. *Id.* at *1.

C.    **Analysis**

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 18. However, the ALJ ultimately concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* Generally, an ALJ may discount a claimant's symptom testimony if it is inconsistent with the claimant's activities, or if the claimant's participation in everyday activities indicates capacities that are transferrable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ provided three distinct rationales for discounting plaintiff's symptom testimony. First, he noted that the symptoms were inconsistent with the objective medical evidence; next, he found plaintiff's complaints were inconsistent with his conservative course of treatment; and finally, he determined that plaintiff's symptom complaints conflicted with his ADLs. Tr. 19-21. Plaintiff assigns error to each rationale.

### 1. Objective Medical Evidence

As a threshold matter, the ALJ acknowledged that plaintiff exhibited a wide range of signs and symptoms, including: "emotional changes, depression, anxiety, sadness, fearful thoughts, some tension, aggression, irritability, short-term memory problems, difficulty concentrating, feeling down or hopeless, feelings of guilt, little interest or pleasure in doing things, sleep disturbance, anger, hypervigilance, paranoia, triggers, fatigue, social isolation, distrust of others, [] frequent paranoid thoughts, [] suicidal ideation with a history of a suicide attempt, and some passive homicidal ideation." Tr. 20-21. However, the ALJ noted that although examinations were "varied," plaintiff "generally demonstrated alertness, orientation, good cooperation, normal mood, normal affect, clear speech, a logical thought process, normal cognition, average estimated intelligence, normal memory, normal attention, normal concentration, and normal insight and judgment, but variable eye contact." *Id.* The ALJ supported his finding with a string citation to multiple medical treatment notes. Tr. 20 (citing (Bl0F/3 (Tr. 424); B12F/16 (Tr. 452), 22-23 (Tr. 458-59), 27 (Tr. 463), 40 (Tr. 476), 44 (Tr. 480), 49 (Tr. 485), 52 (Tr. 488), 66 (Tr. 502), 87 (Tr. 523), 137 (Tr. 573), 140 (576); Bl7F/4-5 (Tr. 645-46), 22 (Tr. 663), 26 (Tr. 667), 30 (Tr. 671), 34 (Tr. 675), 42 (Tr. 683), 46 (Tr. 687)).

The notes the ALJ cited, however, do not support the conclusion he reached, namely, that plaintiff "generally" presented with such benign symptoms. Although the notes indicate that plaintiff demonstrated normal memory and orientation to time, place, person, and situation, that does not reflect the breadth of the observations made by his treatment providers.

For example, despite some normal findings during a mini-mental status examination ("MMSE") in May 2016, plaintiff was noted at the same visit to have aggravated PTSD symptoms, was assessed positive for anxiety and insomnia, and was referred to Lane County Behavioral Health ("LCBH") for intake. Tr. 478-80. The ALJ further cited a normal MMSE on February 22, 2016; however, plaintiff's PHQ-9 results on that date reflected "moderate depression." Tr. 482-85. Despite the ALJ's citation to a normal MMSE in February 29, 2016, plaintiff complained of anxiety, depression, and memory problems. Tr. 572-73. Additionally, anxiety and irritability, in conjunction with ineffectual medications, were noted on September 12 and October 4, 2016. Tr. 684, 688.

The ALJ also cited records from 2015 and 2017, including chart notes from December 23 2015, which state that plaintiff demonstrated normal memory and orientation; however, on that date, he was positive for anxiety, and the provider noted that plaintiff presented with anxious and fearful thoughts, aggravated by traumatic memories, and complained of panic attacks. Tr. 487-88. Although plaintiff had logical, clear speech and cooperated at an exam on January 21, 2015, he was advised to continue anger counseling, and the provider noted plaintiff was isolating himself "to avoid acting on his urge to fight." Tr. 646. The ALJ cited a June 2017 chart note in support of normal findings; but on that date, the provider reported that plaintiff felt his mood was down, he had ongoing anxiety and anger, and his mental health medications were increased. Tr.

664.[2]  In May 3, 2017 chart notes cited by the ALJ, plaintiff was noted to be anxious, sad, and

angry, and his Abilify prescription was not effective.  Tr. 668.  In March 29 2017 chart notes

cited by the ALJ, plaintiff was anxious and angry.  Tr. 672.  In February 9, 2017 chart notes, also

relied upon by the ALJ, plaintiff's provider reported that plaintiff had adverse reactions to

Cymbalta, Wellbutrin, and Zoloft, and received no benefit from Propranolol, Prazosin,

Gabapentin, or Buspar.  Tr. 676.  Additionally, plaintiff was noted to have increased irritability.

Tr. 676.  Finally, in January 11, 2017 chart notes cited by the ALJ, plaintiff reported anxiety and

ineffectual medications.  Tr. 680.  Thus, based on the record recounted above, it is plain the

ALJ's conclusion that plaintiff's symptoms were "generally" normal is not supported by

substantial evidence.

       Other portions of the record buttress this conclusion.  A January 21, 2015 chart note that

was not cited by the ALJ indicates that plaintiff suffered from restlessness, difficulty initiating

sleep, and difficulty concentrating, and was feeling down, and depressed or hopeless feelings for

several days, in addition to feelings of guilt.  Tr. 509.  In a series of chart notes that the ALJ also

failed to cite, plaintiff presented with anger (Tr. 541); reduced eye contact (Tr. 543); emotional

changes (Tr. 552); nervousness, anxiety, and panic attacks (Tr. 558, 562); and depression (Tr.

566).  In another uncited chart note from June 3, 2016, plaintiff's provider noted plaintiff

---

[2] The court notes that the chart notes of clinical visits between June 8, 2017 and September 12,
2016 (Tr. 662-689) all include identical, transposed introduction sections with the headings
"Prescriber's Evaluation," "Mental Status Exam Written Narrative," Safety Management Plan,"
and "Formulation."  *See* Tr. 663-64, 667-68, 671-72, 675-76, 679-80, 683-84, 687-88.  At the
end of each transposed section, the provider included a short summary notes corresponding to
each individual visit, along with the associated date.  *See, e.g.*, Tr. 688 ("9/12/16: says no better
with propranolol, but his BP is better . . . .").  It appears the ALJ may have reviewed the
transposed notes without recognizing that they were reproductions of plaintiff's intake visit, as
the ALJ repeatedly cited them.  *See* Tr. 20, 22 (citations to Exhibit B17F).  The notes in question
are all signed by treating physician Paul Choi, M.D.

suffered from regular nightmares, isolating behaviors, being triggered to anger by others, irritability, and hypervigilance.  Tr. 648-49.

Moreover, the ALJ completely failed to identify what components of plaintiff's symptom testimony was undermined by his finding.  *See Dodrill*, 12 F.3d at 918  ("It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible.") (citation omitted); SSR 16-3p, *available at* 2017 WL 5180304, at *8 (the administration "will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions").

Accordingly, the ALJ's first rationale for discrediting plaintiff's symptom allegations—that they were not supported by objective medical evidence—does not meet the clear-and-convincing threshold.  *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("the report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology") (citation omitted), *Garrison*, 759 F.3d at 1015 ("the clear and convincing standard is the most demanding required in Social Security cases.") (citation omitted).

## 2.    Treatment Issues

The second rationale set forth by the ALJ for discrediting plaintiff's symptom allegations was that plaintiff's "treatment has been very conservative, largely therapy and prescription medication.  He has not generally received the type of medical treatment one would expect for a totally disabled individual."  Tr. 21.  Again, the ALJ's finding is facially flawed to the extent it is couched in general terms, contrary to the requirements set forth in *Dodrill* and SSR 16-3p, *supra*.  There is no specific "type of treatment" that "one would expect" for a "totally disabled individual."  Furthermore, none of those three phrases carry any legal significance in the context

of disability benefits adjudication.  *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("A claimant does not need to be utterly incapacitated in order to be disabled.") (quoting *Benecke v. Barnhart*, 379 F.3d 594 (9th Cir. 2004)).

Conservative treatment, on the other hand, has often been recognized as a clear and convincing reason to discredit symptom testimony.  *See, e.g.*, *Molina*, 674 F.3d at 1113 (ALJ may rely on inadequately explained failure to seek treatment or to follow a prescribed course of treatment).  Here, although the ALJ invoked a generally valid reason to discount symptom testimony, the ALJ neglected to identify what testimony was undermined by plaintiff's conservative treatment, contrary to long-established Ninth Circuit standards.  *See, e.g.*, *Dodrill*, 12 F.3d at 918 (ALJ must identify what testimony is not credible).  An independent review of the record demonstrates there were no extended periods where plaintiff did not seek treatment for his mental impairments, nor did he affirmatively fail to follow his prescribed course of treatment.  Indeed, although disagreeing with plaintiff's assertion of error, the Commissioner concedes that "counseling and medication regimens may not be conservative in all cases."  Def.'s Br. 8 (ECF No. 19).

The Commissioner further asserts that the rationale is valid here because plaintiff's treatment was "conservative in light of his extreme allegations," including "homicidal ideation" and "fear of all people."  *Id.* at 8-9.  But the argument fails on two counts.  First, the ALJ did not set forth such reasoning in his decision; therefore the Commissioner's argument constitutes erroneous *post-hoc* rationalization.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).  Second, it is unclear on this record why plaintiff's suggestion that he had homicidal ideation was not reliable, as he regularly presented with anger or irritation at treatment visits, and has a criminal record including a conviction and incarceration for felony assault.  Tr.

47.  It is equally vexing why the ALJ would find plaintiff's testimony that he "feared all people" unreliable, as the ALJ at step three found that plaintiff had *marked* limitations in interacting with others and formulated an RFC that precluded *all* interactions with the public.  Tr. 17-19.  Indeed, the record as a whole reflects that plaintiff has removed himself from society by living for years in a tent in an isolated campground, an apparently self-imposed "extreme" living situation consistent with his testimony of extreme symptoms.  For all these reasons, the ALJ's second rationale does not meet the exacting clear-and-convincing legal standard.

### 3.    ADLs

The ALJ additionally impugned plaintiff's symptom testimony based on purported conflicts with his daily activities.  As noted above, the rationale is generally valid where it is properly applied to the record evidence.  The ALJ found plaintiff's abilities to perform adequate self-care, count change, go to the store, sing karaoke at a bar, and ride his bike for hours each day suggestive of a "higher level of function than that alleged[.]"  Tr. 21.  But such findings are minimal for a record that spans more than five years.  As noted, *supra*, the Social Security Administration does not require claimants to be so disabled that they are precluded from all activity; as the Ninth Circuit has held, "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (citation omitted).

By any measure, plaintiff's ADLs are minimal and consistent with his testimony.  For instance, plaintiff stated he was able to shop in stores, but sometimes required help and preferred to shop at odd hours to avoid interactions with others.  Tr. 48.  Plaintiff represented that he owned two pairs of pants and bathed once a week at a local filling station because of the lack of amenities in his tent.  Tr. 318.  He did not cook at all.  *Id.*  Plaintiff acknowledged that he was

able to count change, although he also noted that he did not have any money and or bills to pay, consistent with his homelessness. Tr. 320. At various times, plaintiff listed his hobbies as "none" and "keeping to [him]self." testimony that stands uncontradicted on this record. Tr. 60, 320. It is not clear how plaintiff's ability to ride his bicycle undermined his symptom allegations, particularly considering plaintiff testified did so to avoid the few people who camp in the area, and that he typically rides to be in an even more secluded area. Tr. 59-60. The ALJ provided no reasoning to find such reports unreliable, nor were they inconsistent with any other testimony. As such, the ALJ's ADLs rationale fails.

## II.     Medical Opinion Evidence

### A.     Relevant Law

The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle*, 533 F.3d at 1164. The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. § 404.1527.[3] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. § 404.1527(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting

---

[3] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. § 404.1527.

a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1040.

### B. Dr. Alvord

Plaintiff argues the ALJ erred in failing to properly encapsulate in the RFC components of the medical opinion provided by examining psychologist Scott T. Alvord, Psy.D. The Commissioner maintains that the ALJ did not err because he properly translated the medical opinion into concrete limitations and incorporated those limitations into the RFC.

Dr. Alvord administered a one-time psychological examination of plaintiff on August 15, 2017. Tr. 752-62. During the examination, Dr. Alvord administered a battery of psychological tests, gathered a medical history, and reviewed a prior April 21, 2015 psychological assessment completed by Paula Belcher, Ph.D. Dr. Alvord initially noted that plaintiff presented as "guarded, irritable, and agitated." Tr. 752. Dr. Alvord added that, "I constantly had to downshift in order to establish enough rapport to encourage him to participate. He seemed to find the testing particularly distracting and agitating. This is something I see frequently in my practice with individuals who have sustained some level of frontal lobe injury." *Id.* The doctor was "minimally successful" in encouraging plaintiff's participation. Tr. 755. Dr. Alvord also noted that plaintiff reported he "won't take his meds" because they make him feel lethargic. Tr. 754.

Under the heading of "diagnostic impressions," Dr. Alvord opined that plaintiff "present[ed] as an individual similar to others [the doctor] ha[d] evaluated suffering from Chronic Traumatic Encephalopathy ("CTE")," and diagnosed Mild Neurocognitive Disorder, secondary to a history of concussions and possible hypertensive episodes. Tr. 758. Dr. Alvord also diagnosed chronic PTSD, opining that plaintiff's "symptoms [were] considered significant

and unfortunately, likely progressive." *Id.* The doctor validated plaintiff's symptom reports, including plaintiff's feeling that "his neurocognitive limitations are increasing," and stated, "I suspect this is true regarding his memory, focus, attention, etc. but also his ability to moderate his behaviors." *Id.* The doctor further opined that "[f]ar more intensive psychiatric care" was indicated, which he felt plaintiff was unlikely to pursue due to "paranoia and his unfortunate response to medications in the past[.]" *Id.* Dr. Alvord suggested that plaintiff "should be monitored closely for increasing mood symptoms especially in the domain of suicidal/homicidal ideation." *Id.* In a check-box section of the opinion, Dr. Alvord assessed marked limitations in dealing with the public, supervisors, coworkers, and responding appropriately to changes in the routine work setting. Tr. 761.

The ALJ reviewed and summarized Dr. Alvord's opinion in his decision, and indicated Dr. Alvord's opinion prompted the ALJ to assess limitations beyond those set forth by the reviewing state-agency medical experts. Tr. 20-21. Overall, the ALJ purported to accord the medical opinion "some weight," and recounted that Dr. Alvord assessed mild difficulties in understanding simple instructions but moderate difficulty remembering and carrying out such instructions; marked difficulty in understanding, remembering, and carrying out complex instructions; marked difficulty in making judgments on complex work-related decisions; marked difficulty interacting with the public, supervisors, and co-workers; and marked difficulty responding appropriately to normal work situations and to changes in routine. Tr. 21.

Plaintiff argues that the ALJ erred by failing to properly account for Dr. Alvord's finding that plaintiff had marked limitation in interacting with the public in the RFC, which allows some interaction with supervisors and co-workers, and by failing to account for plaintiff's marked limitations in responding appropriately to "usual work situations." Pl.'s Br. 14 (ECF No.

13).  The latter point is easily disposed of: the ALJ accounted for plaintiff's marked limitation in responding to normal work situations and changes in routine by including the following in the RFC: "[Plaintiff] requires a static work environment with few changes in work routines and settings."  Tr. 19.

The former point is less clear, but discernable.  Although the RFC incorporated Dr. Alvord's opinion that plaintiff was precluded from public contact, the ALJ did not assess such a significant limitation in plaintiff's ability to interact appropriately with supervisors and coworkers, instead finding plaintiff was limited to "only minimal superficial interaction with supervisors and coworkers," despite the fact that Dr. Alvord assessed "marked" limitations in that domain.  Tr. 761.  As the Commissioner maintains, the ALJ presumably tempered Dr. Alvord's opinion as to supervisor and coworker interaction with the medical opinions of the state reviewing doctors, all of whom determined plaintiff was not significantly limited in such interactions.  *See* Tr. 139-40, 151-52, 166-67, 179-80.  Indeed, the ALJ is the proper arbiter of such ambiguities in the medical record.  *Tommassetti*, 533 F.3d at 1041-42.  Because the ALJ determined Dr. Alvord's opinion warranted only partial weight, he was not required to strictly adopt all of the doctor's opined limitations into the RFC.  *Vertigan*, 260 F.3d at 1049 (holding it is ALJ's responsibility to determine the RFC, not the treating physician).  Considering the ALJ accorded "some weight" to the opinions of both Dr. Alvord and the state-agency doctors, it is reasonable to infer the ALJ properly translated plaintiff's social limitations into an RFC precluding public contact, while substantially limiting plaintiff's contact with supervisors and coworkers.[4]  *See Magallanes*, 881 F.2d at 755 (holding it is proper for a reviewing court to draw

---

[4] In his reply brief, plaintiff asserts that the ALJ's failure to adopt Dr. Alvord's limitations regarding coworkers and supervisors was inconsistent with all of the other medical opinions of

reasonable inferences from an ALJ's decision, if such inferences are there to be drawn).

Although plaintiff provides an alternative interpretation, because the ALJ's interpretation of the

evidence was rational and supported by substantial evidence, the court is obligated to affirm the

ALJ's reasonable conclusion in this circumstance. *Batson*, 359 F.3d at 1198 (citation omitted).

## C.    Dr. Belcher

Plaintiff was examined by psychologist Paula M. Belcher, Ph.D., and although the ALJ

summarized the doctor's findings, he did not expressly assign weight to her April 21, 2015

assessment. *See* Tr. 20-22, 370-74. Plaintiff asserts the ALJ erred in failing to describe the

weight afforded to Dr. Belcher's report—specifically, the doctor's statement that plaintiff's

"greatest problem in the workplace will be getting along with supervisors." Tr. 374. In relevant

part, Dr. Belcher also indicated that plaintiff has difficulty finding a place to shower because

there are "too many people" at nearby service station, but he does eat his single meal a day there.

Dr. Belcher provided diagnoses of PTSD, severe alcohol use disorder in remission, and

"[f]eatures of antisocial personality disorder." Tr. 374. The doctor hypothesized that plaintiff's

PTSD was "relatively debilitating in terms of his day-to-day functioning, causing him extreme

anxiety leading to aggression around others." *Id.*

The Commissioner argues that the ALJ was not required to weigh Dr. Belcher's

assessment because "it is not clear that either hypotheses [extreme anxiety leading to aggression

around others and problems with supervisors] are an opinion." Def.'s Br. 12. The relevant

regulations define medical opinions as "statements from acceptable medical sources that reflect

judgments about the nature and severity of your impairment(s), including symptoms, diagnosis

---

record. That assertion is inaccurate: Dr. Belcher did not assess limitations as to coworkers or the
general public.

and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Under this rubric, Dr. Belcher's hypotheses are certainly medical opinions, as they provide the doctor's judgments about the nature and severity of plaintiff's combined mental health symptoms, which lead to anxiety and aggression, and which pose a barrier to his ability to work with supervisors.

The Commissioner's contention that Dr. Belcher's observations do not constitute medical opinions because they were not "concrete limitations" is unavailing because that is inconsistent with the statutory definition of "medical opinion." *Supra.* The Commissioner's reliance on *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) is unavailing. *See* Def.'s Br. 12-13. In *Meanel*, a doctor assessed "decreased concentration skills," which the Ninth Circuit determined was not an "informed opinion" because it "failed to explain the extent or significance" of the limitation.[5] Here, in contrast, Dr. Belcher specifically couched her hypotheses in terms of workplace limitations insofar as she recognized his anxiety and aggression would limit plaintiff's ability to be around others, and that in the workplace, plaintiff's greatest problem would be getting along with supervisors. Tr. 374. Moreover, it is arguable that the language the Commissioner cites in *Meanel* is dicta, as the primary basis for affirming the ALJ in that case was that it was a "meager opinion . . . conclusory and unsubstantiated by relevant medical documentation." *Meanel*, 172 F.3d at 1114. Additionally, in contrast to the medical opinion at issue in *Meanel*, Dr. Belcher's medical opinion was clearly based on plaintiff's clinical interview and mental status examination, which the Ninth Circuit recognizes as objective measures in the

---

[5] It is also unclear whether the *Meanel* court properly reviewed the relevant regulatory definitions, as they are nowhere referenced in the court's discussion.

context of mental impairments.  *Buck*, 869 F.3d at 1049 (doctor conducted clinical interview and mental status examination are objective measures, "considering the nature of psychiatry").

The relevant regulations are not ambiguous in requiring that the ALJ must "evaluate every medical opinion we receive," by considering a list of factors.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Longstanding Ninth Circuit precedent is just as unequivocal: "[t]he ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over another."  *Garrison*, 759 F.3d at 1012 (citation omitted).  In other words, an ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it," or otherwise failing to provide a substantive basis for its rejection.  *See id.* at 1013.  The ALJ's failure to articulate the weight accorded to Dr. Belcher's medical opinion was error.

The Commissioner further argues that even assuming the ALJ failed to expressly weigh Dr. Belcher's opinion, the error was harmless because "it is not clear that either hypothesis conflicts with the RFC assessment."  Def.'s Br. 13.  Absent any analysis, however, it is impossible for the court to discern whether the ALJ properly considered Dr. Belcher's opinion in formulating the RFC.  The Commissioner provides some *post hoc* rationales in support of the RFC finding, but as noted above, the court is precluded from affirming the ALJ's nondisability determination on grounds that are not discussed in the written decision.  *Burrell v. Colvin*, 775 F.3d 1133, 1144 (9th Cir. 2014) (citation omitted).  To the extent the Commissioner maintains the ALJ's decision is valid because it remains supported by substantial evidence, that argument too fails.  *See Garrison*, 759 F.3d at 1012 ("An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").  The ALJ provided no such

interpretation, nor did he make a finding regarding Dr. Belcher's opinions. The ALJ's failure to do so constitutes reversible legal error.

### D. Dr. Choi

Plaintiff also assigns error to the ALJ's evaluation of the medical opinion of treating physician, Paul Choi, M.D., which was accorded "little weight" in the ALJ's decision. *See* Tr. 19, 609-10. The Commissioner maintains that the ALJ did not err because Dr. Choi's assessment was inconsistent with his own treatment notes, which did not support "extreme limitations." Def.'s Br. 15.

Dr. Choi provided his medical opinion in a worksheet dated June 8, 2017. Tr. 609-14. The doctor noted that he had treated plaintiff for psychiatric management every six weeks for nearly a year, beginning in August 2016. *Id.* Dr. Choi listed PTSD as plaintiff's diagnosis, which was supported by signs and symptoms of severe anxiety, insomnia, irritability, depression, and paranoia. Tr. 610. The doctor explained that plaintiff would be "unable to work with [the] public due to extreme anxiety," and that plaintiff was "completely unable to focus/function/stay composed in a work setting." *Id.* Dr. Choi concluded by describing that plaintiff "would definitely NOT be able to maintain attendance. Would expect 12 to 20 days of missed work per month due to paranoia/anxiety/low mood." *Id.* (emphasis in original). In a check-box section of the opinion, Dr. Choi indicated plaintiff had marked limitation in making simple work-related judgments, and understanding, remembering, and carrying out complex instructions. Tr. 613. Dr. Choi assessed extreme limitations in interacting with the public, supervisors, coworkers, and adjusting to changes in the workplace routine. *Id.* Dr. Choi indicated that his assessment was supported by "severe paranoia/anger/distrust of others make him unable to interact successfully w/ others." Tr. 614.

The ALJ provided two reasons for according little weight to Dr. Choi's medical opinion, despite the deferential status that treating physician's opinions are to be given by default. First, the ALJ noted the doctor's opinion was inconsistent with his own chart notes, and second, that his opinion was inconsistent with that of Dr. Alvord. Tr. 22. Neither finding, however, is supported by substantial evidence. For example, similar to the ALJ's errors in assessing plaintiff's credibility discussed *supra*, the ALJ cited to a section of the chart notes that was transposed in each of plaintiff's treatment visits with Dr. Choi. *See* n.2, *supra*. Thus, to the extent the ALJ found that plaintiff had generally normal symptoms on October 4, 2016 (citing Tr. 683), those observations do not correspond to October 4, 2016; rather, the October 4, 2016 section of the chart note is located on the following page: "10/4/16: still c/o anxiety, c/w propranolol, start Cymbalta 20mg to target anxiety, c/w work with Jule (biofeedback) and Ami, f/u in 4 weeks." Tr. 684. All of the notations for plaintiff's meetings with Dr. Choi can be viewed in a single report dated June 8, 2017. Tr. 663-664. Those notes paint a very different picture than that presented in the ALJ's decision, as they document repeated anxiety, anger, irritation, distrust of others, many medication changes, and poor responses to many medications. *Id.* Accordingly, the ALJ first rationale for rejecting Dr. Choi's medical opinion cannot said to meet the specific-and-legitimate legal standard.

The ALJ's second rationale for rejecting Dr. Choi's medical opinion is that it was "inconsistent with the more recent examination and findings of the consultative examination" by Dr. Alvord. Tr. 22. For the reasons discussed above, the ALJ did not commit reversible err in assessing Dr. Alvord's medical opinion. However, it is not clear that Dr. Alvord's opinion and findings were inconsistent with Dr. Choi's. As a threshold matter, the ALJ did not identify how the opinions were inconsistent, which was reversible error in itself, as the court cannot discern

any specific-and-legitimate reasoning on such a vague finding. *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not *explicitly* reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs . . . . The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (emphasis added) (citation omitted).

Indeed, comparisons of the medical opinions of Drs. Alvord and Choi reveal few, if any, specific contradictions, as Dr. Alvord's opinion was stated in more general terms: contrary to Dr. Choi, Dr. Alvord did not identify specific functional limitations, nor opine on the number of days plaintiff would be likely to be absent from the workplace. Dr. Alvord did, however, opine that plaintiff was limited by neurocognitive disorder and PTSD, which was consistent with, and even went beyond Dr. Choi's PTSD diagnosis. *Compare* Tr. 610 *with* Tr. 759. Both doctors opined plaintiff would have difficulty interacting with others, including Dr. Alvord's statement that plaintiff "should be monitored closely for increasing mood symptoms especially in the domain of suicidal/homicidal ideation." Tr. 758; *see* Tr. 610 ("unable to work with public due to extreme anxiety"). The doctors both noted plaintiff's limitations were increasing due to the progressive nature of his mental conditions, impairing his "memory, focus, attention . . . [and] his ability to moderate his behaviors." Tr. 758. That assessment was generally consistent with Dr. Choi's opinion that plaintiff was "completely unable to focus/function/stay composed in a work setting," and that "severe anxiety and paranoia cause [plaintiff] to be unable to concentrate." Tr. 610, 613. Although Dr. Alvord did not opine on plaintiff's ability to maintain acceptable attendance in the workplace, he observed that plaintiff "acknowledged missing [medical]

appointments in the past, [] secondary to concerns regarding agitation and anger." Tr. 754.[6] Like Dr. Choi, Dr. Alvord noted significant paranoia, opining that "far more" psychiatric treatment was needed, but he was pessimistic that plaintiff would follow through, due in part to "his level of paranoia." Tr. 758.

There was some difference in the doctors' check-box assessments of plaintiff's social limitations due to his mental impairments: namely, while Dr. Choi assessed "extreme" limitations in the relevant areas of interacting with the public, supervisors, co-workers, and changes in workplace routines, Dr. Alvord assessed "marked" limitations in those areas. *Compare* Tr. 613 *with* Tr. 761. The worksheets the doctors completed defined both terms: marked was defined as "serious limitation . . . substantial loss in the ability to effectively function in this area," whereas extreme was defined as "major limitation . . . no useful ability to function in this area." Tr. 612, 760. As such, the doctors' opinions represent a distinction of degree, rather than a stark contrast. Considering that the ALJ failed to provide substantial evidence in support of his first rationale for rejecting Dr. Choi's opinion, the ALJ therefore also failed to provide support for his finding that Dr. Choi's opinion was inconsistent with Dr. Alvord's. Moreover, in the absence of such support, the ALJ's finding that Dr. Alvord's opinion should be afforded greater weight than Dr. Choi's is similarly unsupported. Indeed, such a finding would be contrary to the regulations and long-established Ninth Circuit precedent, because by default, "the opinion of a treating physician is [] entitled to greater weight than that of an examining physician." *Garrison*, 759 F.3d at 1012 (citation omitted). Further, as noted,

---

[6] To the extent the ALJ found Dr. Choi's attendance limitations inconsistent with Dr Alvord's opinion, the rationale was invalid. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008) (ALJ errs to reject a medical opinion on grounds that it contradicted a less detailed assessment).

*supra*, an ALJ errs by rejecting a medical opinion by asserting that another medical opinion is more persuasive, without providing a substantive basis for the finding. *Id.* at 1013. For these reasons, the ALJ neither met the proper legal standard for rejecting Dr. Choi's opinion, nor provided valid evidentiary support for his finding.

## III.     Lay Witness Evidence

### A.     Lay Witness Testimony

The record in this case was supplemented by the written lay testimony of two "non-acceptable" medical providers who treated plaintiff during the adjudication period. In an undated letter, Ami Sletteland, M.Ed., QMHP, indicated that plaintiff had severe PTSD that rendered him unable to work on a sustained basis. Tr. 404. She indicated that plaintiff's "avoidance, anger, hyperarousal, fear, negative thoughts and beliefs, and anxiety" were "so extreme, he has difficulty managing daily interactions and his own care." *Id.*

Julia Riutzel, LPC, NCC, provided an opinion dated March 14, 2017, in which she opined that plaintiff's symptoms were consistent with PTSD and traumatic brain injury. Tr. 405. She believed that that plaintiff required "extensive therapy to achieve maximum effect." *Id.*

### B.     Relevant Law

Lay-witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114). Further, the reasons provided must be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). Where the ALJ has provided clear and

convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless. *Molina*, 674 F.3d at 1121-22.

### C.    Analysis

The ALJ rejected the opinions of both providers, noting that they were inconsistent "with the findings of the consultative examiner, as well as the bulk of the treating notes from the claimant's providers as noted above." Tr. 22. For the reasons explained above, however, the ALJ failed to properly evaluate the findings of the consultative examiner and erred in making the blanket finding that plaintiff's treatment notes reflected generally normal findings. Accordingly, neither reason can be said to be germane to the lay witnesses. As such, the findings were erroneous.

## IV.    Remand for Benefits

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Commissioner*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020 (9th Cir. 2014) (citations omitted). Even if all of the requisites are met,

however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

For the reasons described herein, the ALJ erred in evaluating the credibility of plaintiff's symptom testimony, the medical opinions of one treating physician and one examining physician of record, as well as otherwise valid testimony provided by two "non-acceptable" treating medical sources. Accordingly, the first prong of the credit-as-true analysis is met.

The record in this matter is not complete, however. Further development is required to assess the appropriate weight that ought to be accorded to Dr. Belcher's consultative medical opinion. Accordingly, the court does not reach the third prong of the credit-as-true analysis.

On remand, Dr. Belcher's medical opinion must be assessed and weighed in light of the record as a whole, including a new assessment of plaintiff's subjective symptom allegations, reevaluation of the medical opinion of treating physician Dr. Choi, and new assessments of the opinions of the erroneously discounted "non-acceptable" treatment providers. Because it is beyond the court's ambit to weigh or re-weigh the record evidence and thereby substitute its judgment for that of the ALJ, additional proceedings is the proper remedy in this matter. *See Thomas*, 278 F.3d at 954. Therefore, the court exercises its discretion to remand this case on an open record.

//

//

//

//

//

//

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED March 6, 2020.

_____ /s/ Youlee Yim You _____
Youlee Yim You
United States Magistrate Judge
